STATE EX REL. PENNINGTON COUNTY, et al., Plaintiffs
v.
MERNAUGH et al., Defendants

(210 N.W.2d 409)

(File No. 11191. Opinion filed August 31, 1973)

Petition for rehearing denied October 12, 1973

Jeremiah D. Murphy, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, James Wilson, Wilson, Gunderson & Olson, Rapid City, Terence A. O'Keefe, Siegel, Barnett, Schutz, O'Keefe & Ogborn, Aberdeen, for plaintiffs.

Gale E. Fisher, May, Johnson & Burke, Sioux Falls, for intervenor, Northwestern Bell Telephone Co.

Warren May, and David A. Gerdes, Martens, Goldsmith, May, Porter & Adam, Pierre, for balance of intervenors.

M. T. Woods, Woods, Fuller, Shultz & Smith, Sioux Falls, for amicus curiae.

Gordon Mydland, Atty. Gen., John Dewell, Asst. Atty. Gen., Pierre, for defendants.

WOLLMAN, Justice.

This is an original proceeding in this court based upon an application for a writ of certiorari by the several plaintiffs named above who contend that the State Board of Equalization and the Department of Revenue exceeded their jurisdiction in the manner in which the property belonging to telephone, telegraph, gas, electric and pipeline companies was assessed and equalized for tax purposes in 1972. Several of these companies were permitted to intervene in this proceeding.

Stated briefly, plaintiffs contend that the defendants exceeded their jurisdiction in equalizing the property in question by

reducing the value of such centrally assessed real and personal property to 42.49% of full and true value for 1972, whereas the defendants should have equalized such centrally assessed real property in accordance with the county average on a county-to-county basis and the personal property on the basis of 60% of full and true value as was ordered with respect to railway property in the case of Appeals of Chicago & Northwestern Railway Co., 85 S.D. 613, 188 N.W.2d 276.

The record reveals that statewide the average assessment of locally assessed real property was 38.33% of its full and true value, ranging from a low of 27.6% in Custer County to a high of 53% in Yankton County.

The record supports plaintiffs' contention that defendants did not apply the county sales ratio average equalization factor to the real property belonging to the centrally assessed utilities in each county and did not apply the 60% equalization factor to the personal property of said utilities in each county. For example, during the period in question Aurora County had locally assessed real property of a full and true value of $51,676,399, and locally assessed personal property of a full and true value of $12,588,933, or a ratio of 80% to 20% real to personal property. For the same period intervenor Northwestern Bell Telephone Company had $3,656 worth of real property and $127,430 of personal property (both based upon original cost) in Aurora County, or a ratio of 3% to 97% real to personal property. Had defendants equalized Northwestern Bell's property in accordance with the rule laid down in the Northwestern Railway case, supra, the countywide average of 40.6% would have been applied to Northwestern Bell's real property in Aurora County and the 60% factor applied to its personal property.*

Although other examples could be given, we think that the record supports plaintiffs' contention that vast amounts of

---

* The intervenors contend that much of the property which they have listed as personal property is actually not personal property in the conventional sense of the word but that they are required to list such property as personal property on the forms prepared by the Department of Revenue. For the purposes of this proceeding we must accept the figures as reported by the intervenors for the period of time in question.

personal property belonging to the centrally assessed utilities were equalized by using a percentage heavily weighted by the lower real property equalization percentage rather than the 60 % factor applied to personal property. Plaintiffs contend that at least $38,940,287 in taxable value of property belonging to the centrally assessed utilities was eliminated from the statewide assessment rolls by the defendants' action, with a consequent loss of potential tax revenue to the political subdivisions and taxing districts in the amount of $2,141,715. Although we need not and do not determine whether these figures are correct, we agree that the assessment and equalization practice followed by the defendants resulted in a substantial potential loss of revenue to plaintiffs and other political subdivisions and taxing districts similarly situated.

Having thus stated the issue raised by plaintiffs, we turn to the question whether certiorari is the proper remedy in this case. SDCL 21-31-1 provides that:

> "A writ of certiorari may be granted by the Supreme and circuit courts, when inferior courts, officers, boards, or tribunals have exceeded their jurisdiction, and there is no writ of error or appeal nor, in the judgment of the court, any other plain, speedy, and adequate remedy."

Plaintiffs' right of appeal, if any, from the action of the Department of Revenue under the provisions of SDCL 10-1-41, SDCL 1-26, or SDCL 21-33 is more illusory than real and does not preclude the granting of a writ in this case. State v. Circuit Court of Seventh Judicial Circuit, 61 S.D. 154, 246 N.W. 638. See also State v. Knight, 52 S.D. 572, 219 N.W. 258.

The taxation of electric, heating, water and gas companies is governed by SDCL 10-35. After the assessment is made and the Department of Revenue has given notice to the utilities, SDCL 10-35-12 provides that:

> "After such date of hearing, and on or before the fourth Monday of August, the department of revenue shall finally equalize the assessments and notify each com-

pany thereof by mail. The department of revenue shall certify the value finally determined to the county auditor of each county in which the company assessed owns property, which value shall be entered on the tax lists of such county and the proper levies extended thereon, and the tax so extended shall be collected by the county treasurer and distributed by him in the same manner as other taxes."

SDCL 10-38-2 provides that:

"Any utility feeling aggrieved by the action of the state department of revenue may, within fifteen days after receiving notice from such department as to its assessed valuation or the determination of value, appeal to the state board of equalization for a determination of such grievance. * * *"

In 1972 the intervenor gas and electric utilities companies did not appeal to the State Board of Equalization. Thus the opportunity to appeal from a decision of the State Board of Equalization was not available in this case as we held that it was in the case of City of Sioux Falls v. State Board of Equalization, 87 S.D. 106, 203 N.W.2d 419. See also Appeals of the City of Aberdeen, 87 S.D. 112, 203 N.W.2d 177. Therefore the right of appeal under SDCL 10-11-42 and 10-11-43 is not applicable in this case as to those utilities.

The State Board of Equalization equalizes the assessments of property belonging to telephone companies. SDCL 10-33-16. Rather than to fragment this proceeding by dismissing the writ as it pertains to telephone company property, however, we conclude that in the circumstances of this case considerations of judicial economy warrant a disposition by certiorari as to all elements of the case.

We conclude that what was written in State ex rel. American Express Co. v. State Board of Assessment and Equalization, 3 S.D. 338, 53 N.W. 192, is applicable here:

"The writ is confined to questions touching the jurisdiction of the subordinate courts, officers, boards, or tri-

bunals, and the regularity of their proceedings. In other words, when such courts, officers, boards, or tribunals have jurisdiction of the subject-matter and of the party, their action will be sustained unless in their proceedings they do some act forbidden by law or neglect to do some act required by law; or, as stated by Judge Cooley, 'when the assessment is erroneous in point of law, either because the assessors have adopted some inadmissible basis in making it, or because they have disregarded any of the mandatory provisions of the statutes on which parties assessed have a right to rely,' *certiorari* will lie to correct the proceedings." 3 S.D. 338, 345, 53 N.W. 192, 194.

■ We hold that the rule announced in the Northwestern Railway case, supra, is applicable to the property in question and that the defendants should have equalized the real property belonging to the utilities on a county-to-county basis in accordance with the assessment ratio in each county and that the personal property belonging to the utilities should have been equalized at the statutory 60% factor. It may very well be that utilities (as well as railroads, as was powerfully argued in dissent in the Northwestern Railway case) constitute a separate class of property for tax purposes. So long as the defendants equalize the property of utilities in accordance with ratios applied to all other property within the state, however, they must do so in accordance with the proportionate equalization rule announced in the Northwestern Railway case.

A writ will be issued directing the Department of Revenue and the State Board of Equalization to set aside their actions equalizing the property in question and directing them to equalize the property in accordance with the guidelines set forth in this opinion.

BIEGELMEIER, C. J., and WINANS and DOYLE, JJ., concur.

HANSON, J., dissents.

HANSON, Justice (dissenting).

The writ should not have been issued—the remedy was by appeal.

Furthermore, the statutes clearly express the procedure for assessing property belonging to public utilities and the factors to be taken into consideration. Their property cannot be simply classified by judicial fiat into "real" and "personal" property.